Massachusetts Chocolate Company, Complainant, v. Pride Candy Company, Defendant.
Gustave A. Oehler and Martha H. Oehler, Intervening Petitioners, Appellants, v. Charles H. Penikoff, Receiver (Defendant), Appellee.

Gen. No. 33,486.

Opinion filed June 24, 1929.

SONNENSCHEIN, BERKSON, LAUTMANN & LEVINSON, for appellants; BEN ROTHBAUM, of counsel.

GALLAGHER, SHULMAN & ABRAMS, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

The Massachusetts Chocolate Company, a corporation, filed its bill which it is stated is brought under the provisions of sections 53 and 54 of the Corporation Act, Cahill's St. ch. 32, ¶¶ 53, 54, against the Pride Candy Company, an Illinois corporation. There is no other defendant. The bill set up that complainant was a creditor of the defendant (the amount or char-

acter of the indebtedness not stated); that a judgment in favor of Rachel E. Davis for $550 had been rendered against the defendant in the municipal court of Chicago: that an execution had been issued on the judgment, demand made for payment but that no part of the judgment had been paid and that it was still in full force and effect; that defendant had closed its doors and ceased to do business for more than 60 days prior to the filing of the bill; that the bill was filed on behalf of complainant and all other creditors who wished to join; that the defendant had certain office furniture, fixtures, equipment and merchandise which would greatly depreciate in value unless a receiver was appointed. The prayer was that a receiver be appointed to collect and marshall assets of the defendant and for general relief.

Afterwards the court appointed a receiver who took possession of the furniture, fixtures and office equipment of the defendant, and on December 31, 1928, filed his petition in which he set up an itemized list of the property belonging to the defendant and prayed that an order be entered authorizing him to sell the property upon five days' notice to defendant's creditors and for authority to pay the customary commission for advertising and making the sale. On the same day the matter came on for hearing and an order was entered granting the prayer of the petition, and it was further ordered that the receiver hold the proceeds realized from the sale until the further order of the court. On January 4, 1929, Gustave A. Oehler and Martha H. Oehler, his wife, upon notice to the receiver, were given leave to file a petition instanter whereby they claimed to have a chattel mortgage on the property in the possession of the receiver, and which he was about to sell; that the mortgage was for $6,000 and there was a balance of $3,105 due and unpaid. The petition set up this fact, and further that the receiver had sent out notice of the sale he was about to make. The prayer

was that the receiver be ordered to turn over the property to the petitioners. A copy of the chattel mortgage and the recording thereof is attached to and made a part of the petition. The receiver filed an answer setting up that he had no knowledge of the execution of the chattel mortgage, that he claimed it was not a lien and denied that petitioners were entitled to any relief. January 8 the court entered an order on motion of the solicitors of the receiver, that the receiver be authorized to sell the assets in his possession free and clear of any lien of the petitioners, and that their lien, if any, attach to the funds realized out of the sale, less expenses of advertising and auctioneer's commission of 10 per cent. It appears that afterwards the property was sold and that the funds are still held by the receiver.

The matter came on for hearing on the petition of the Oehlers; the court heard the evidence and entered a decree in which it was held that the chattel mortgage given by the defendant corporation to the Oehlers was void and therefore the Oehlers had no lien on the property. It is from this decree that the Oehlers appeal.

The facts as disclosed by the evidence are briefly these: Oehler had been conducting a candy business in Chicago and owned the equipment, fixtures, etc., covered by the chattel mortgage and sold by the receiver; he agreed to sell this property for $10,000 to D. C. Duggan and Fred Gardiner, $4,000 to be paid in cash and a chattel mortgage on the property for the remaining $6,000, it being the understanding and intention of all the parties that a corporation would be formed, the property turned into the corporation, which would issue its chattel mortgage for the $6,000. A corporation was accordingly formed and in the statement made to the Secretary of State in applying for a charter, the value of the property was placed at

$16,000 and it was stated that this was subject to a chattel mortgage of $6,000. This $10,000 was represented as having been paid by turning over the property in question to the corporation. Afterwards the chattel mortgage was executed and recorded. The evidence further showed that Duggan paid his $2,000 in cash to Oehler, that Gardiner paid $500 and gave Oehler security for the remaining $1,500 which he was to pay in cash; after the corporation was formed Gardiner turned over his stock as collateral security to Oehler. The corporation then began conducting the candy business but was not successful and it appears that Oehler loaned it money and took assignments of bills that were due and owing from the corporation's customers. The evidence further shows that payments were made upon the $6,000 secured by the chattel mortgage until it was reduced to $3,105, as above stated. It further appears from the evidence that at the first meeting of the directors of the defendant company one of the persons who subscribed for one share of stock turned this share over to Oehler. Oehler was then elected a director and vice-president. The court in his opinion in deciding the case said that Gardiner and Duggan had paid Oehler $10,000 for the property which, for another purpose, had a few months before been appraised at $5,000 and without adding anything of value to the $10,000 worth of property it was represented to the Secretary of State that it was worth $16,000. The court held that this was unwarranted because it would lead people to extend credit to the corporation, believing that there was $10,000 equity in the property belonging to the corporation when in fact there was only $6,000 of equity, the property having been sold for $10,000 and incumbered for $6,000, and that this rendered the transaction fraudulent and the chattel mortgage void.

We have carefully considered all the evidence in the record, and there is no intimation nor evidence that the defendant corporation had not agreed to pay to Oehler $10,000 for the property. There is no evidence in the record that Oehler or anyone else intended to defraud anybody when the corporation was formed, nor at any other time, unless it may be said that this appears from the fact that the incorporators represented to the Secretary of State when applying for the charter that the property was worth $16,000. But we are clearly of the opinion that there is no evidence tending to show that Oehler intended to defraud anyone in the transaction. He sold his property for $10,000. We think the chattel mortgage was valid.

The decree of the circuit court of Cook county is reversed and the cause is remanded for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded.*

McSurely, P. J., and Matchett, J., concur.